LILLIENSTERN et al. v. FIRST NAT. BANK.
(No. 3293.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 17, 1926. Rehearing Denied Nov. 25, 1926.)

1. Mortgages ⬦78—Mortgage to secure vendor's lien notes which were void held ineffective.

Where sale of land and vendor's lien notes were void for misrepresentations, mortgage to secure such notes was ineffective.

2. Mortgages ⬦114—Mortgages to secure vendor's lien notes held not to cover account of mortgagor, not intended to be included in mortgages transferred with account to plaintiffs.

Mortgages securing vendor's lien notes *held* not to cover mortgagor's account with mortgagee transferred to plaintiff with mortgages, where account did not exist at time mortgages were given and was not intended to be included in mortgage, though mortgage stated it was to secure all indebtedness hereafter to become due to bank.

3. Mortgages ⬦300—Mortgage lien is discharged by refusal of mortgagee to accept tender of true balance due on mortgage debt.

Tender of true amount of balance due on mortgage debt, refused by mortgagee, operates as legal discharge of mortgage lien.

Appeal from District Court, Titus County; R. T. Wilkinson, Judge.

Action by the First National Bank against George Lillienstern and others. Judgment for plaintiff, and defendants appeal. Modified and affirmed, with directions.

J. A. Ward and H. G. Brown, both of Mt. Pleasant, for appellants.
I. N. Williams, of Mt. Pleasant, for appellee.

LEVY, J. The appellants have prosecuted an appeal from a personal judgment against them in favor of the First National Bank in the total sum of $727, as for conversion of certain bales of cotton. It is an admitted fact that the appellants bought 11 bales of cotton in the open market from Chester Reed, who produced it as a tenant on the John Hargrove farm in 1924. The bank claimed that the entire 11 bales of cotton were covered by a chattel mortgage lien, and of which the appellants had actual notice at the time of the purchase of the cotton. The

appellants' defense was that the cotton was not covered by any valid lien at the time they purchased it from Chester Reed. We conclude that the record fully sustains the appellants' contention, and their assignments of error should be. sustained.

It appears that Chester Reed, a tenant farmer, was desirous of purchasing a farm from H. C. Huckeba, and he signed six vendor's lien notes as the consideration. At the same time the notes were signed Chester Reed executed a chattel mortgage to secure the payment thereof. The mortgage was dated June 22, 1923. This mortgage expressly recited that it was to secure the vendor's lien notes. On February 14, 1924, Chester Reed executed another chattel mortgage to H. C. Huckeba to secure the vendor's lien notes. This mortgage was on two mules, and, as testified by Mr. Huckeba, "was given as additional security on the land notes." It further appeared that these two mortgages were drawn on printed blank forms gotten up and usually used by the appellee bank. Each blank form had this printed general clause in it:

"And as well to secure the payment of all other indebtedness now due and owing said bank, and any and all indebtedness hereafter to become due and owing said bank."

Chester Reed did not owe the bank any money at the date of the mortgages. Mr. Huckeba had obtained the blank forms from the bank as a means of convenience to himself, and the above quoted printed clause was merely not erased from the formal instrument. It further appears that H. C. Huckeba orally agreed to furnish Chester Reed supplies to make a crop, beginning "12—1—23" and ending "8—23—24." The total amount of the supplies furnished during that period of time was $660.05. After the execution of these mortages H. C. Huckeba indorsed the land notes to appellee bank. The precise date of the indorsement does not appear. And on September 26, 1924, H. C. Huckeba transferred the above open account to the appellee bank. These facts are undisputed.

[1, 2] In the trial the jury made the finding, on ample evidence to warrant it, that the sale of the land by H. C. Huckeba to Chester Reed was void and ineffective because of misrepresentations. As a consequence of such void sale the vendor's lien notes were expressly declared by the judgment to be unenforceable as against the maker, Chester Reed. Likewise, as a legal result, the mortgage given to secure such notes would be ineffective. The appellee bank does not appeal from such judgment. Therefore the appellee bank, in support of the present judgment against appellants, must rely alone, as it appears to do, upon the contention that it had a mortgage covering the $660.05 account transferred to it by H. C. Huckeba. The evidence does not in any wise so show. There is no testimony in the record showing or tending to show that "Chester Reed and H. C. Huckeba had an agreement prior to the beginning of the gathering of the 1924 crop that said Huckeba should have a lien on the crop grown on the John Hargrove farm" to secure the payment of the $660.05 account. H. C. Huckeba was not the landlord and had no interest in the John Hargrove farm. And clearly no claim could be predicted by the bank as to the $660.05 account based on the mortgages of 1923 and 1924. The face of said mortgages expressly specifies the particular indebtedness included and intended to be included therein, which was the vendor's lien notes. The said account was not in existence or agreement at the date of the first mortgage, and was just begun at the date of the second mortgage. It was manifestly not contemplated by the parties that the account for advances should be included in the second mortgage, for the evidence expressly shows that the second mortgage, of February 14, 1924, "was given as additional security on the land notes." Mr. Huckeba, the mortgagee and the owner of the account at the time, so admits, and all the evidence admittedly so shows. No legal force can be given the above-quoted general words printed in the mortgage form used, in view of the evidence. As shown by the proof, the inapplicable sentences of the printed general form were merely not erased at the time of signing, and the bank had no claim against Chester Reed when the mortgage was executed, either presently or prospectively.

[3] It further appears that on September 26, 1923, Chester Reed executed a chattel mortgage to the State National Bank covering certain personal property, and "my entire crop to be grown by me during 1924." The mortgage was expressly given to secure a note for $220.50 payable to the said bank on September 15, 1924. This indebtedness was later assigned to appellee bank. On September 30, 1924, the note had been paid down to $22.10 by the maker thereof. On October 4, 1924, the mortgagor, Chester Reed, sold one bale of cotton to appellants and he immediately tendered to the vice president of the bank, who was acting for the bank, $22.10 out of the proceeds of the sale. The tender of the money was made as the balance due on the mortgage debt. The vice president refused to take the money. He admits that such sum was tendered and that he refused to take it. The refusal to accept the money tendered was not because the amount was not the correct balance due on the note, but because the entire balance of the proceeds of the sale of the cotton was not offered to be applied on the $660.05 account, which was, as shown above, another and entirely different indebtedness. The other 10 bales were purchased after October 4. These facts appear without contradiction. The tender of

the true amount of the balance due on the mortgage debt and refused by the mortgagee operated as a legal discharge of the mortgage lien. 1 Jones on Mortgages (6th Ed.) §§ 891, 893; 38 Cyc. p. 162; 7 Cyc. p. 69; 26 R. C. L. p. 648.

The judgment is modified so as to deny a recovery in favor of the appellee against the appellants, and, as so modified, the judgment will be in all things affirmed, the appellee bank to pay costs of appeal and all costs incurred by appellants in the trial court.